IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | § § § | No. 60, 2018 |
| Defendant Below, Appellant, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § § | C.A. Nos. N11C-01-089 and N15C-05-069 |
| CORVEL CORPORATION, | § § | (Consolidated) |
| Plaintiff Below, Appellee. | § § § § | |

Submitted: September 26, 2018
Decided: November 20, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED**.

David Newmann, Esquire, and Catherine E. Stetson, Esquire (*Argued*), Hogan Lovells US LLP, Washington, D.C., Timothy Jay Houseal, Esquire, Jennifer M. Kinkus, Esquire, and William E. Gamgort, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Michael J. Rosen, Esquire and Peter F. Lovato, III, Esquire, Skarzynski Black, LLC, for Appellant, Homeland Insurance Company of New York.

John M. Seaman, Esquire (*Argued*), and April M. Kirby, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware, for Appellee, CorVel Corporation.

**VAUGHN**, Justice:

## I.   INTRODUCTION

Homeland Insurance Company of New York appeals from a Superior Court judgment entered against it in the amount of $13.5 million plus pre-judgment interest.   The litigation that led to the judgment was initiated by CorVel Corporation.   CorVel is a Delaware company that operates a national Preferred Provider Organization (PPO) network.   Homeland issued CorVel a claims-made errors and omissions liability policy with limits of $10 million and a policy period of October 31, 2005 to October 31, 2006.   Thereafter, Homeland issued renewal policies, which were the same in all material respects.

CorVel's PPO network included agreements with medical providers in Louisiana.   In late 2004 and early 2005, Louisiana medical providers began filing claims (the "PPO claims") asserting that CorVel had improperly discounted medical payments without providing proper notice in violation of a Louisiana statute (the "Louisiana PPO Statute").   Litigation ensued in Louisiana which ultimately involved millions of dollars of claims against CorVel.   In 2011, CorVel entered into a settlement of the litigation.   As part of the settlement consideration, CorVel paid $9 million.

In 2015, CorVel filed its complaint in this case, alleging that Homeland owed it damages and penalties under another Louisiana statute.   The statute in question,

1

La. R.S. 22:1973 ("Louisiana's Bad Faith Statute"), provides, in relevant part, that an insurance company that knowingly misrepresents "pertinent facts or insurance policy provisions" shall be liable for any damages sustained by the insured "as a result of" the misrepresentation and may, in addition, be held liable for penalties.[1] CorVel alleged that Homeland knowingly misrepresented facts or policy provisions in a complaint that Homeland filed in a declaratory judgment action in Delaware in 2011. The alleged misrepresentation was an averment that CorVel had not timely reported the PPO claims in accordance with the policy's requirements. The damages CorVel sought were the $9 million that it paid to settle the Louisiana litigation, penalties, attorneys' fees, and pre-judgment interest. The Superior Court agreed with CorVel's claim and awarded it $9 million in damages, $4.5 million in penalties, and pre-judgment interest.

Homeland makes three arguments on appeal. First, it argues that the allegation in its declaratory judgment complaint, that CorVel had not timely reported the claims, was a statement of a coverage position that could not give rise to a finding of bad faith under either Delaware or Louisiana law. Next, it argues that no causal connection exists between the allegation in the declaratory judgment complaint and

---

[1] This statute was previously codified at La. R.S. 22:1220, but was renumbered, effective January 1, 2009, to R.S. 22:1973. *See* 2008 La. Act No. 415.

CorVel's decision to settle the PPO claims. Finally, it argues that the applicable statute of limitations bars CorVel's claim. The Superior Court, Homeland contends, committed errors by ruling against it on each of these three points.

We have concluded that the statute of limitations does bar CorVel's claim and that the Superior Court erred by ruling that it did not. Because the statute of limitations bars CorVel's claim, we find it unnecessary to address Homeland's first two arguments.

## II. FACTS AND PROCEDURAL HISTORY

As mentioned, the earliest PPO claims against CorVel were filed in late 2004 and early 2005. Those claims included claims filed by Lake Charles Memorial Hospital ("LCMH") with the Louisiana Department of Labor, Office of Workers' Compensation.[2] In July 2005, CorVel filed an action in a federal district court in Louisiana seeking to compel arbitration of the claims. The federal district court agreed with CorVel, and on November 6, 2006, ordered that the parties submit their disputes to arbitration. On or about December 22, 2006, LCMH submitted a demand for arbitration to the American Arbitration Association (the "LCMH

---

[2] Apparently CorVel's alleged improper discounting created underpayments of medical bills below a Louisiana fee schedule adopted under Louisiana's workers' compensation law.

arbitration"). CorVel notified Homeland in writing of the arbitration proceeding on March 28, 2007.

By letter dated June 4, 2007, Homeland informed CorVel that it declined coverage of all the PPO claims. As grounds for denial, Homeland relied upon provisions in the policy that excluded (1) claims made against CorVel prior to the inception date of CorVel's claims-made policy, (2) claims made during the policy period but which were related to claims made prior to the inception date, and (3) claims not reported within 90 days of the end of the policy period.

On September 3, 2010, the American Arbitration Association issued an Order holding that LCMH's arbitration demand against CorVel could proceed as a class-wide arbitration. On September 24, 2010, CorVel wrote to Homeland informing it of the arbitration order. CorVel's letter also stated that CorVel would look to Homeland for full defense and indemnity of the arbitration claims. In December 2010, CorVel requested that Homeland commit itself to funding a settlement of the LCMH arbitration up to the policy limits.

Homeland did not agree to fund a settlement of the LCMH arbitration and, on January 10, 2011, filed the above-mentioned declaratory judgment action in the Delaware Superior Court seeking a declaration that it had no obligation under the policy to provide defense or indemnity coverage to CorVel for the PPO claims.

4

One of the grounds given for such relief was that "CorVel did not report the [LCMH arbitration] or any subsequent related actions to Homeland in accordance with the [policy's] reporting requirements."[3]

Not long thereafter, on March 24, 2011, CorVel and Homeland were named as defendants in a class action filed in 2009 in Louisiana state court known as the *Williams* action.[4]  The plaintiffs in the *Williams* action alleged the same violations of the Louisiana PPO Statute by CorVel, on behalf of the same group of medical providers, as were asserted in the LCMH arbitration.

On June 23, 2011, CorVel settled with the plaintiff class in the *Williams* action for $9 million plus a partial assignment of CorVel's Homeland policy.[5]  This settlement also resolved the LCMH arbitration.

On May 8, 2015, CorVel commenced this action in the Superior Court, alleging breach of the policy for Homeland's refusal to indemnify and defend CorVel in the Louisiana actions.  An amended complaint (dated June 9, 2015) added the specific allegation that Homeland violated Louisiana's Bad Faith Statute

---

[3] App. to Appellant's Opening Br. at 242, ¶ 41.
[4] Homeland was named a defendant under a Louisiana Direct Action Statute, La. R.S. 22:1269.
[5] Although CorVel assigned to the plaintiff class any and all of its rights under the policy, it retained the right to reimbursement for legal fees and litigation costs up to $1 million.

by knowingly misrepresenting that CorVel failed to report the PPO claims in compliance with the policy's reporting requirements.

In the meantime, the plaintiff class in the *Williams* action was litigating the policy coverage issues against Homeland. On January 21, 2016, the Louisiana trial court granted summary judgment to the class, finding that the policy covered the plaintiff class's claims. It rendered a policy-limits judgment in the amount of $10 million against Homeland in favor of the plaintiff class. The Louisiana Court of Appeals affirmed the grant of summary judgment in an opinion dated December 29, 2016, and the Louisiana Supreme Court denied certiorari on April 13, 2017.[6] These developments effectively mooted Homeland's declaratory judgment action in Delaware.

On January 5, 2018, the Superior Court granted summary judgment in favor of CorVel on its bad faith claim. The court found that Homeland committed bad faith under Louisiana's Bad Faith Statute by knowingly misrepresenting in its declaratory judgment action that CorVel failed to comply with the reporting requirements of the policy. The court further found that CorVel suffered $9 million in damages (the amount it paid to settle the *Williams* action and the LCMH

---

[6] *Williams v. SIF Consultants of La., Inc.*, 209 So. 3d 903 (La. Ct. App. 2016), *cert. denied*, 218 So. 3d 629 (La. 2017) (mem.).

6

arbitration) as a result of Homeland's bad faith.   The Superior Court rejected all of the arguments Homeland now makes on appeal.   As to the statute of limitations, the court held that "CorVel could not have had a claim for damages under the Louisiana Bad Faith Statute until it had a valid claim for coverage," which the court viewed as having occurred when the Louisiana trial court found coverage in its decision on January 21, 2016.[7]

### III.   STANDARD OF REVIEW

We review a "grant of summary judgment *de novo* to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[8]

### IV.   DISCUSSION

The Superior Court determined, and the parties agree, that Delaware's three-year statute of limitations (10 *Del. C.* § 8106) applies to CorVel's bad faith claim.[9] Under Delaware's statute of limitations, CorVel was required to bring this claim within three years "from the accruing of the cause of such action."[10]   The Superior

---

[7] *Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 2018 WL 317283, at *12 (Del. Super. Jan. 5, 2018).
[8] *GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (en banc) (internal quotation marks omitted).
[9] *See* Appellant's Opening Br. at 44; Appellee's Answering Br. at 40.
[10] 10 *Del. C.* § 8106(a).

Court found that CorVel's bad faith claim did not accrue until the Louisiana trial court found coverage under the policy on January 21, 2016, "because CorVel could not incur damages until there was a determination on coverage."[11] Homeland contends that this finding was error and that the claim accrued when CorVel could plead damages, which was June 23, 2011, the date on which CorVel settled the *Williams* action and the LCMH arbitration. CorVel, by contrast, contends that "the Superior Court correctly held that CorVel did not have a viable bad faith claim, and could not plead damages to support that claim, until there was first a finding of coverage and CorVel incurred damages."[12]

We agree with Homeland that CorVel's bad faith claim accrued no later than June 23, 2011. Once CorVel could plead the necessary elements of a *prima facie* claim under Louisiana's Bad Faith Statute, the cause of action accrued for purposes of Delaware's statute of limitations.[13] Where, as here, the plaintiff is the insured

---

[11] *Homeland*, 2018 WL 317283, at *12.

[12] Appellee's Answering Br. at 41.

[13] The parties have dueled over the choice of law for CorVel's bad faith claim, with CorVel arguing for Louisiana law and Homeland contending for Delaware. In reality, it might be that neither party is correct, given the centrality of California to the nationwide insurance relationship set up between CorVel, as a California-based business, and Homeland, an insurer incorporated in New York with its principal place of business in Massachusetts. *See Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 459–60 (Del. 2017); *Travelers Indem. Co. v. CNH Indus. Am., LLC*, 191 A.3d 288, 2018 WL 3434562, at *6–10 (Del. 2018) (TABLE). In other words, there is a litigable issue over whether CorVel may even proceed under the Louisiana statute, or must press any claim for bad faith denial of its claim under another state's law. For purposes of this appeal, we accord CorVel the benefit of assuming, for the sake of our timeliness

8

party, a *prima facie* claim for damages under subsection (B)(1) of Louisiana's Bad Faith Statute requires the following elements: (1) the insured has "a valid, underlying, substantive claim upon which insurance coverage is based";[14] (2) the insurer knowingly misrepresented pertinent facts or insurance policy provisions relating to that coverage;[15] and (3) the insured suffered damages "as a result of" that misrepresentation.[16]

CorVel could plead the three elements of the *prima facie* case immediately after it settled the *Williams* action and the LCMH arbitration on June 23, 2011. First, CorVel could plead that it had a valid claim upon which the insurance coverage was based—a claim for indemnification for all loss, including defense costs, resulting from the PPO claims asserted against it in Louisiana, claims for which it previously sought coverage under the policy. Second, CorVel could plead that Homeland's alleged knowing misrepresentation had been made earlier in 2011 when it filed its declaratory judgment complaint alleging that the PPO claims had not been properly reported and therefore were not covered. Third, CorVel could plead that

---

analysis, that its position is correct, and we confine ourselves to addressing whether, assuming that is the case, CorVel made a timely claim.

[14] *Clausen v. Fid. & Deposit Co. of Md.*, 660 So. 2d 83, 85 (La. Ct. App. 1995).

[15] La. R.S. 22:1973(B)(1).

[16] *Id.* 22:1973(A); *see also Durio v. Horace Mann Ins. Co.*, 74 So. 3d 1159, 1170-71 (La. 2011). The Louisiana Supreme Court has held that one may recover a penalty under subsection (C) of the statute without pleading or proving any actual damages. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 860 So. 2d 1112, 1118-19 (La. 2003). Here, however, CorVel seeks to recover actual damages.

it suffered damages as a result of Homeland's misrepresentation because it paid $9 million of its own money to settle the *Williams* action and the LCMH arbitration to avoid the risk of a potentially higher judgment. The limitations period expired three years later on June 23, 2014. Therefore, because CorVel did not file this action until May 8, 2015, its claim is barred by the statute.

CorVel contends that it could not have pleaded damages and thus could not have asserted a bad faith claim when it settled the Louisiana litigation because a court had not yet found that there was coverage under the policy. In essence, CorVel argues, where coverage is disputed, a cause of action under Louisiana's Bad Faith Statute does not accrue until a court has first made a judicial determination that the insurance policy actually covers the underlying claims. The two Louisiana cases CorVel relies upon do not support its position.

CorVel cites *Riley v. Southwest Business Corp.* as standing for the proposition that the requirement that the insured "must first have a valid, underlying, substantive claim upon which insurance coverage is based" is not satisfied, where coverage is disputed, until a court adjudicates coverage in the insured's favor.[17] *Riley,* and the cases cited by it, however, simply establish that an insurer cannot be liable—and thus an insured cannot prevail—under Louisiana's Bad Faith Statute unless the

---

[17] 2008 WL 4286631, at *3 (E.D. La. Sept. 17, 2008) (quoting *Clausen*, 660 So. 2d at 85).

insurer was actually obligated to provide coverage. In *Riley*, for example, the district court dismissed the plaintiff's bad faith claim because the plaintiff was neither a party to nor a third-party beneficiary of the insurance contract, meaning he had no underlying claim for coverage.[18] CorVel also cites *Magidson v. Lansing* in support of its position, but this case, like *Riley*, merely provides that an insurer cannot be liable for bad faith penalties where there is no coverage under the policy.[19]

Neither of these cases suggest that there must be a judicial determination of coverage before a bad faith claim accrues. They simply support the proposition that the insured must assert its own rights, not a third party's, to bring a claim under Louisiana's Bad Faith Statute. CorVel had a valid claim upon which the insurance coverage was based, and could plead that claim, when it settled the *Williams* action and the LCMH arbitration in June of 2011. The bad faith action accrued then. The fact that the Louisiana trial court did not adjudicate the coverage claim until January 21, 2016, is not relevant.[20]

Lastly, we must address CorVel's argument that Homeland is estopped from asserting a statute of limitations defense under 18 *Del. C.* § 3914. Section 3914

---

[18] *See id.*

[19] 2012 WL 6677912, at *8 (La. Ct. App. Dec. 21, 2012).

[20] Under CorVel's theory of the statute of limitations, it filed the amended complaint containing the bad faith claim before its cause of action accrued: it filed its bad faith claim on June 9, 2015, but argues that this claim did not accrue until January 21, 2016.

requires an insurer "during the pendency of any claim received pursuant to a casualty insurance policy to give . . . timely written notice to claimant . . . of the applicable state statute of limitations regarding action for his or her damages."[21]   By its terms, this statute refers to damages that are recoverable "pursuant to" an insurance contract.   The Louisiana Supreme Court, however, has held that the damages and penalties available under Louisiana's Bad Faith Statute are separate and distinct from, and do not include, any damages that may be available under the insurance contract itself.[22]   Accordingly, 18 *Del. C.* § 3914 is inapplicable to the claim for damages CorVel seeks under Louisiana's Bad Faith Statute, meaning Homeland was never required to inform CorVel of the statute of limitations for this claim.

## V.   CONCLUSION

For the foregoing reasons, the Superior Court's grant of summary judgment and entry of judgment in CorVel's favor is reversed.

---

[21] 18 *Del. C.* § 3914.
[22] *Durio*, 74 So. 3d at 1170 ("Because it is a violation of the statute, not a breach of the insurance contract, which triggers the penalty provision, it would be inconsistent to hold that contractual amounts due pursuant to the terms of the contract should be included as 'damages sustained' under [Louisiana's Bad Faith Statute].").