IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AGSPRING, LLC, | § | |
| | § | No. 75, 2022 |
| Plaintiff and Counterclaim | § | |
| Defendant Below-Appellant, | § | Court Below—Court of Chancery |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. 2019-1021 |
| NGP X US HOLDINGS, L.P., | § | |
| | § | |
| Defendant and Counterclaim | § | |
| Plaintiff Below-Appellee. | § | |

Submitted: September 21, 2022
Decided: December 2, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

## **O R D E R**

On this 2nd day of December 2022, it appears to the Court that:

(1) This appeal involves a dispute over an arbitration award. The Plaintiff-Appellant is Agspring, LLC ("Agspring"). The Defendant-Appellee is NGP X US Holdings, LP ("NGP"). In the arbitration, NGP sought and was awarded indemnification from Agspring for legal fees and costs it was incurring in litigation in Delaware and Kansas. In this appeal, Agspring contends that the Court of Chancery erred: (1) by denying its motion to vacate the award; and (2) by granting NGP's motion to confirm the award. Agspring makes two claims. Its first claim has two parts. First, it claims that the Court of Chancery committed error when it failed to make a determination as to whether an agreement to arbitrate existed between the

parties. The court, it argues, wrongfully presumed that such an agreement existed. Second, it claims that the Court of Chancery erred by delegating the question of arbitrability of the parties' dispute to an arbitration panel rather than deciding that question itself. Agspring claims that the Court of Chancery erred by declining to consider whether quasi-estoppel barred NGP from asserting rights to arbitration and indemnification. For the reasons that follow, we have concluded that the Court of Chancery's judgment should be affirmed.

(2) In 2012, Agspring was formed by NGP, Randal Linville ("Linville"), and Bradley Clark ("Clark"). Agspring's activities included "own[ing] and operat[ing] businesses involved in purchasing, storing, processing, and shipping agricultural commodities."[1] At the time of Agspring's formation, NGP held a 98% ownership share.

(3) Simultaneously with the execution of Agspring's LLC Agreement ("the 2012 LLC Agreement"), Agspring and NGP entered into an Advisory Services, Reimbursement and Indemnification Agreement (the "Services Agreement"). Both the 2012 LLC Agreement and the Services Agreement (together, "the 2012 Agreements") contained arbitration and indemnification provisions. Arbitration was set forth in Section 11.9 of the 2012 LLC Agreement, which provided that "Any dispute arising out of or relating to this Agreement . . . shall be settled exclusively

---

[1] Opening Br. at 6.

2

and finally by arbitration in accordance with this Section 11.9."[2]  It further provided that:

> Such arbitration shall be administered by JAMS/Endispute, Inc., a Delaware corporation and national dispute resolution company ("**JAMS**"), pursuant to . . . the JAMS Comprehensive Arbitration Rules and Procedures, if the amount in controversy exceeds $250,000 (. . . the "**Rules**").  The making, validity, construction, and interpretation of this Section 11.9, and all procedural aspects of the arbitration conducted pursuant hereto, shall be decided by the arbitrator(s)."[3]

The Services Agreement provided that:  "Any dispute arising out of or relating to this Agreement . . . shall be settled exclusively and finally by arbitration in accordance with Section 11.9 of that certain Limited Liability Company Agreement, dated effective as of [August 30], 2012 by the Company and the other persons party thereto.[4]"  The Services Agreement thus incorporated the arbitration provisions of the 2012 LLC Agreement by reference.  The reference to the JAMS rules in Section 11.9 of the 2012 LLC Agreement incorporates into that agreement and the Services Agreement the following JAMS Rule 11(b):

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator.

---

[2] App. to Opening Br. at A-0495.
[3] *Id.* at A-0495.
[4] *Id.* at A-0512.

> The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.[5]

(4) In 2015, NGP and the other Agspring members sold their interests in Agspring to a group of investors led by American Infrastructure MLP Funds. The investors took ownership of Agspring through a limited partnership, Agspring LP, which purchased and held all of Agspring's membership interests. The transaction was settled in accordance with a Membership Interest Purchase and Contribution Agreement ("MIPCA"). Section 10.9 of MIPCA specifies:

> The Parties hereby irrevocably submit to the exclusive jurisdiction of any state or federal court sitting in Wilmington, Delaware with respect to any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby, and each Party irrevocably agrees that all claims in respect of such dispute or proceeding shall be heard and determined exclusively in such courts.[6]

The MIPCA's Section 10.2 contained an integration clause, which states, in relevant part: "This Agreement and the Related Agreements constitute the entire Agreement between the Parties hereto pertaining to the subject matter hereof and supersede all prior negotiations, agreements, and understandings of the Parties with respect to the subject matter hereof."[7] Agspring and NGP were both parties to the MIPCA. Following settlement, Agspring LP adopted a superseding Limited Liability

---

[5] JAMS Comprehensive Arbitration Rules & Procedures R. 11(b).
[6] App. to Opening Br. at A-0578.
[7] *Id.* at A-0575.

4

Agreement for Agspring ("the 2015 LLC Agreement"). The 2015 LLC Agreement removed the arbitration clause that had been in the 2012 LLC Agreement. In 2017, Agspring LP was converted to Agspring Holdco, LLC ("Holdco"). Ultimately, all ownership interests held in Agspring LP were converted to Holdco units. Holdco now owns 100% of Agspring.

(5) In January 2019, Clark and Linville brought suit against Agspring in Kansas over matters related to their employment. While NGP was not a party to this suit, it claims to have suffered "significant expense"[8] as a result of a third-party subpoena served upon it by Agspring.

(6) In April of 2019, Holdco brought suit in the Superior Court of Delaware against NGP, Clark, and Linville, alleging fraudulent inducement and unjust enrichment in connection with the sale of their interests in Agspring ("the MIPCA lawsuit"). It sought damages and indemnification under the MIPCA.

(7) As a result of the MIPCA lawsuit and the expenses incurred from the third-party subpoena in the Kansas suit, NGP requested indemnification from Agspring in accordance with the 2012 LLC Agreements. When Agspring refused, NGP filed a demand for arbitration with JAMS. In the demand, NGP alleged that Agspring had breached the Services Agreement by failing to provide advancement for all costs and expenses NGP was incurring in the Delaware and Kansas litigation.

---

[8] Answering Br. at 11.

It sought indemnification for all such fees and costs. Agspring responded by filing this action to enjoin the arbitration. It argued that the MIPCA superseded the Services Agreement, and that under the MIPCA, NGP was required to bring its claims in a Delaware court. The Court of Chancery denied Agspring's Motion for a Preliminary Injunction. The court recognized that the question of arbitrability is a question for the court to decide "[u]nless the parties clearly and unmistakably provide otherwise."[9] It ruled that under the 2012 Agreements, Agspring and NGP clearly and unmistakably had agreed to delegate the question of arbitrability to the arbitrator and that it was "up to the arbitrator to resolve any challenge to the validity of either of those contracts as a whole[,] . . . [including] whether either the 2012 LLC [A]greement or the [S]ervices [A]greement . . . are no longer legally binding as a whole and have been superseded."[10] It reasoned that Agspring's challenge to arbitration was not a specific challenge to the arbitration provisions involved, but was instead a broader, general claim that the 2012 Agreements were superseded entirely by MIPCA. It also specifically noted Section 11(b) of the JAMS rules and its provision that "Jurisdictional and arbitrability disputes, including disputes over the . . . existence . . . of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator."[11]

---

[9] App. to Opening Br. at A-0271 (quoting *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002)) (internal quotation marks omitted).
[10] App. to Opening Br. at A-0280.
[11] *Id.* at A-0273 (quoting JAMS Comprehensive Arbitration Rules & Procedures R. 11(b)).

6

(8) The parties then moved forward with arbitration. The JAMS Arbitration Panel ("the Panel") determined that "NGP's arbitration rights under the 2012 Services Agreement and the 2012 LLC Agreement survived the signing of the MIPCA and the 2015 LLC Agreement."[12] Ultimately, the Panel entered an award entitling Agspring to indemnification of its fees and expenses. As of November 2021, the Panel's award required Agspring to advance $5,893,000 to NGP.

(9) Following the Panel's award, Agspring filed a Motion in the Court of Chancery for Summary Judgment asking the Court to enter an order vacating the arbitration award on the grounds that NGP was contractually obligated to assert its claims in accordance with the procedures set forth in the MIPCA; that NGP was estopped from enforcing the arbitration provisions in the 2012 Agreements because it failed to disclose the Services Agreement in violation of warranties and representations contained in the MIPCA agreement; and that JAMS had no jurisdiction over the parties' dispute under the 2012 Agreements in light of the MIPCA. NGP moved for an order confirming the award. The Court of Chancery denied Agspring's motion and granted NGP's motion. This appeal followed.

(10) This Court "review[s] a grant [or denial] of summary judgment *de novo* to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in

---

[12] App. to Opening Br. at A-0700.

dispute and that the moving party is entitled to judgment as a matter of law."[13]

(11) In *James & Jackson, LLC v. Willie Gary*, this Court recognized that the threshold question regarding the validity of an arbitration agreement, known as substantive arbitrability, is a question for the courts to decide unless the parties' contract shows "clear and unmistakable evidence" that the parties agreed to submit the question to arbitration.[14] This Court explained that the question of substantive arbitrability is a "gateway question[]" and may be delegated to arbitration by contract.[15] The Court also noted that substantive arbitrability will generally be a question to be determined through arbitration "in those cases where the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability."[16] In this case, the Court of Chancery below found that the 2012 LLC Agreement and the Services Agreement showed a "clear and unmistakable intention to arbitrate the issue of arbitrability."[17]

(12) In *Rent-A-Center West, Inc. v. Jackson*, the United States Supreme Court also found that "parties can agree to arbitrate 'gateway' questions of

---

[13] *Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 197 A.3d 1042, 1046 (Del. 2018) (en banc) (quoting *GMC Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (en banc)) (internal quotation marks omitted).

[14] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (internal quotation marks omitted).

[15] *Id.* at 79.

[16] *Id.* at 80.

[17] App. to Opening Br. A-0274.

'arbitrability[.]'[18] The Court drew a distinction between a specific challenge to an agreement's arbitration provision, and a challenge to another provision of the agreement or a challenge to the agreement as a whole.[19] Under the Federal Arbitration Act, the Court reasoned, a specific challenge to an agreement's arbitration provision should be decided by the court, whereas challenges to other provisions of the agreement or the agreement as a whole are to be decided by the arbitrators if the arbitration provision delegates such disputes to arbitration.[20]

(13) The Court of Chancery applied *Willie Gary* and *Rent-A-Center* in arriving at the conclusion that the 2012 Agreements delegate the question of arbitrability of disputes between Agspring and NGP to the arbitrator.

(14) Agspring argues that neither *Willie Gary* nor *Rent-A-Center* hold that if two parties agree to arbitration in one agreement, they cannot revoke that agreement in a later agreement.[21] It also argues that neither case "removes from courts the initial responsibility to determine that an agreement to arbitrate exists."[22] It further argues that its challenge is not merely to the validity of the arbitration clauses in the 2012 Agreements, but to their very existence;[23] that the Court of Chancery should have determined and found that the MIPCA superseded the arbitration clauses in the

---

[18] *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).
[19] *Id.* at 70.
[20] *Id.* at 71-72.
[21] Opening Br. at 23.
[22] *Id.*
[23] *Id.*

2012 Agreements such that they stopped existing altogether;[24] and that its claim is a specific challenge to the arbitration clauses, as the MIPCA agreement contains its own dispute resolution and forum-selection clauses which nullify the arbitration provisions.[25] It distinguishes *Rent-A-Center* and *Willie Gary* as cases involving valid, existing arbitration agreements, unlike this case, which involves a question as to whether the arbitration clauses continue to exist at all.[26] This question, it argues, should have been decided by the court.[27]

(15) Agspring relies in part upon the recent Eleventh Circuit case of *Reiterman v. Abid.* In that case, the parties entered into a settlement agreement which settled certain disputes between them.[28] The agreement contained a provision that any disputes arising out of the agreement would be settled by arbitration.[29] Subsequently, the parties appeared to have rescinded the agreement.[30] One of the parties thereafter brought suit against the other, and the defendant in that action moved for an order compelling arbitration of the dispute under the settlement agreement.[31] She claimed that whether the parties had mutually rescinded the

---

[24] *Id.* at 31.
[25] *Id.* at 38-39.
[26] *Id.* at 28.
[27] Opening Br. at 29.
[28] 26 F.4th 1226, 1230 (11th Cir. 2022).
[29] *Id.*
[30] *Id.*
[31] *Id.* at 1231.

10

settlement agreement should be decided by an arbitrator.[32] The court denied her motion, reasoning that whether a new contract had been formed rescinding the settlement agreement (and with it, the arbitration clause) was a question to be decided by the court.[33]

(16) It appears that it is undisputed that the 2012 Agreements were valid and enforceable when they were made. Whether a later in time agreement, in this case the MIPCA, superseded the 2012 Agreements, causing them no longer to exist, would, in our view, be a question to be decided by the court, unless the 2012 Agreements show that the parties clearly and unmistakably agreed that such a question would be decided by arbitration. We find no error in the Court of Chancery's decision that the arbitration provisions in the 2012 Agreements clearly and unmistakably showed an intention to submit substantive arbitrability disputes to the arbitrator. We also find no error in the court's finding that Agspring's challenge goes to the 2012 agreements generally, and not specifically to the arbitration clauses in those agreements. We also find no error in the court's decision that the scope of the disputes subject to arbitration include the question involved here, that is, whether the MIPCA superseded the 2012 Agreements. It seems to us that this result follows from the parties' agreement that the JAMS rules would apply, and the provision in

---

[32] *Id.* at 1231-32.
[33] *Id.* at 1232-33.

Rule 11(b) of those rules that "disputes, including disputes over the . . . existence . . . of the agreement under which arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator."[34] An agreement that JAMS rules would apply was apparently not part of the arbitration agreement in *Reiterman,* because no mention of the rules is made in the opinion in that case. We reject Agspring's contention that the Court of Chancery erred in finding that the MIPCA's legal effect on the arbitration provisions of the 2012 Agreements was a question to be decided by the arbitrator, not the court.

(17) Agspring's second claim is that the Court of Chancery committed error when it declined to consider Agspring's argument that "quasi-estoppel barred NGP from asserting rights to arbitration and advancement[.]"[35] The quasi-estoppel claim is based on Agspring's argument that NGP failed to disclose the Services Agreement when it signed MIPCA, but then raised it in an effort to obtain advancement and indemnification when it was sued by Holdco.[36] Agspring claims that allowing NGP to enforce the Services Agreement in support of its advancement and arbitration rights would be unconscionable and allow NGP to gain an advantage at Agspring's detriment.[37] Quasi-estoppel, Agspring argues, would prevent NGP "from accepting a benefit from a representation and then acting inconsistent with that representation

---

[34] JAMS Comprehensive Arbitration Rules & Procedures R. 11(b).
[35] Opening Br. at 41.
[36] *Id.* at 41-42.
[37] *Id.* at 42.

to another party's detriment."[38]

(18) The Arbitration Panel did not address quasi-estoppel. It decided that "The Panel, having decided that NGP is entitled to advancement, rules that advancement procedures should be summary in nature because 'a delay in recognizing advancement rights may ultimately render those rights illusory.'"[39] The Panel also reasoned that Agspring could "claw back" advancements if NGP was "culpable of 'bad faith, gross negligence, or willful misconduct.'"[40] It further noted that "The Delaware courts have also required advancement while the parties litigate the validity of the underlying agreements that provide for advancement and indemnification."[41]

(19) The Court of Chancery rejected Agspring's quasi-estoppel argument. In doing so, it correctly stated that:

> Delaware courts condone vacatur only "where the arbitrator acts in 'manifest disregard' of the law,"[[42]] meaning that "the arbitrator (1) knew of the relevant legal principle[s], (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless

---

[38] *Id.* at 41 (citing *Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008)).

[39] App. to Opening Br. at A-0709 (quoting *Perryman v. Stimwave Techs. Inc.*, 2020 WL 2465720, at *4 (Del. Ch. May 13, 2020)).

[40] App. to Opening Br. at A-0709 (quoting *id.* at A-0509).

[41] App. to Answering Br. at B209.

[42] *Agspring, LLC v. NGP X US Holdings, L.P.*, 2022 WL 170068, at *3 (Del. Ch. Jan. 19, 2022) (quoting *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) (en banc)) (citation omitted).

willfully flouted the governing law by refusing to apply it."[43]

Applying that standard to the facts, it reasoned that the Panel's decision to limit "its decision to the advancement stage and the terms of the 2012 Agreements"[44] was not "tantamount to ignor[ing] the law."[45]

(20)  We find no error in the Court of Chancery's rejection of the quasi-estoppel claim.  Whether the Panel committed error or even serious error is not the issue.  The issue is whether the Panel manifestly disregarded the law, and its decision not to address the defense of quasi-estoppel does not rise to that level.

NOW, THEREFORE, it is the order of the Court that the judgement of the Court of Chancery is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[43] *Agspring*, 2022 WL 170068, at *3 (brackets added) (quoting *SPX Corp.*, 94 A.3d at 750) (citing *Paul Green Sch. Of Rock Music Franchising, LLC. v. Smith*, 389 Fed.Appx. 172, 177 (3rd Cir. 2010)).
[44] *Agspring*, 2022 WL 170068, at *5.
[45] *Id.* (internal quotation marks omitted) (quoting App. to Opening Br. at A-0334).