IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSEPH W. BOOTH and<br>MARGARET A. BOOTH, | § <br> § <br> § | No. 137, 2022 |
| Defendants Below,<br>Appellants, | § <br> § <br> § | Court Below—Superior Court<br>of the State of Delaware |
| v. | § <br> § | C.A. No. S18M-10-040 |
| SHAWN M. GARVIN,<br>SECRETARY OF THE<br>DELAWARE DEPARTMENT OF<br>NATURAL RESOURCES &<br>ENVIRONMENTAL CONTROL, | § <br> § <br> § <br> § <br> § <br> § | |
| Plaintiff Below,<br>Appellee. | § <br> § <br> § | |

Submitted: October 19, 2022
Decided: January 27, 2023

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## O R D E R

On this 27th day of January 2023, it appears to the Court that:

(1) Joseph W. Booth and Margaret A. Booth appeal from a final judgment of the Superior Court in which they were found liable to the Delaware Department of Natural Resources and Environmental Control (DNREC) for environmental clean-up costs and associated administrative costs in the amount of $105,464.87. They contend that the Superior Court committed errors in three rulings issued during the course of this litigation. The environmental contamination occurred at a property

the Booths own in Georgetown, Delaware ("the Site").  The three rulings, the Booths' contentions of error, and this Court's analysis with respect to each will be set forth chronologically in this Order.

(2)  The Booths acquired the Site in 1986.  At the time, the property was and had been for some time used for the operation of a dry-cleaning business known as Thoro-Kleen, Inc. ("Thoro-Kleen").  The Booths continued to operate the dry-cleaning business until 2010.  In that year, Thoro-Kleen ceased operations, but the Booths continued to own the property.  During the course of the operation of the dry-cleaning business, the Site became contaminated with hazardous substances.  In this Order we refer to the Booths and Thoro-Kleen collectively as "the Booths" for ease of composition, except where circumstances may require us to refer to them separately.

(3)  On January 8, 2015, DNREC sent a notice of violation to the Booths informing them of their liability for environmental contamination as owners and operators of the property.

(4)  In September 2016, the Booths agreed to donate the property to Restoration Worship Center, Inc. ("RWC"), a religious organization, so that RWC could take the property through DNREC's Brownfield Development Program ("Brownfield Program").  On or about November 29, 2016, DNREC entered into a "Brownfield Development Agreement" concerning the property with RWC.  The

2

apparent purpose of the agreement was to enable RWC to enter into the Brownfield Program to clean up the Site for the purpose of eventually establishing a church there. The Brownfield Program was established within DNREC to provide an avenue for properties contaminated with hazardous substances to be properly cleaned up and redeveloped.[1] After applying, RWC succeeded in having the Site certified as a participant in the Brownfield Program. While Brownfield Grant funding is not guaranteed, and RWC was made aware of this fact, DNREC incurred remedial costs related to, among other things, paying a company hired by RWC to clean up the Site. The Booths, it appears, continued to be the owners of the property after DNREC and RWC entered into the Brownfield Agreement. The 2015 notice was followed on October 31, 2017 by a Secretary's Order ("the Order") finding the Booths in violation of Delaware's Hazardous Substance Cleanup Act ("HSCA") and the regulations thereunder. The Booths (but not Thoro-Kleen) appealed the Order to the Environmental Appeals Board. Ultimately, the Mr. and Mrs. Booth withdrew the appeal.

(5) On October 11, 2018, DNREC filed suit against the Booths to enforce the October 31, 2017 Order. It sought three times the costs incurred in enforcing the Order plus civil penalties. On April 22, 2019, DNREC filed a motion for summary

---

[1] 7 *Del. C.* § 9122.

judgment "as to all claims asserted in the Complaint[.]"[2]

(6) The Superior Court ruled on DNREC's motion for summary judgment in a Memorandum Opinion and Order dated July 10, 2019. The court summarized its ruling as follows:

> DNREC now sues (1) for damages available under Delaware's Hazardous Substances Cleanup Act ("HSCA"), and (2) for all expenses, including cleanup costs, recoverable pursuant to 7 *Del. C.* § 6005(c). Here, the Booths did not contest the Secretary's Order finding them liable for releases at the Site. As a result, the statutory appeal provisions in DNREC's enabling statute and the doctrine of issue preclusion make the Secretary's findings and conclusions binding in this Superior Court action. Partial summary judgment as to the Booth's liability is therefore granted. The amount of damages due DNREC, however, remains a factual issue. For that reason, DNREC's motion for summary judgment is also denied, part.[3]

The Superior Court found that the Booths failed to exhaust their administrative remedies by withdrawing their EAB appeal.[4] It reasoned that the failure to exhaust administrative remedies resulted in the Booths being bound under the doctrine of issue preclusion by the Secretary's findings and conclusions.[5] The court denied summary judgment for damages, however, as damages had not yet been ascertained.[6] The court further ruled that "the parties may pursue discovery relevant to the amount

---

[2] Opening Br. at 6.
[3] *Garvin v. Booth*, 2019 WL 3017419, at *1 (Del. Super. July 10, 2019).
[4] *Id.* at *4. "EAB" refers to the "Environmental Appeals Board."
[5] *Id.*
[6] *Id.* at *6.

4

of HSCA provided damages resulting from the Booths' refusal to comply with the Secretary's Order."[7] The court also noted, however, that "DNREC limits its claim in the present suit to study and investigation related to costs already incurred."[8]

(7) The Booths claim that the Superior Court erred in granting summary judgment as to the Booths' liability in the July 10, 2019 Memorandum Opinion and Order "because the Secretary never met his burden."[9] The essence of the error, the Booths assert, lies in the Superior Court's application of issue preclusion to prevent their challenge to the Order's findings against them.[10] The Booths maintain that "the Trial Court afforded greater weight than warranted to the Booths' withdrawal of their EAB appeal[.]"[11] The Booths explain their view, arguing that "[t]he Trial Court failed to appreciate that the Secretary could not sue, under § 9109(e), for noncompliance unless the Secretary's Order survived the EAB appeal and thus, for that purpose, there was no difference between the EAB affirming the Secretary's Order and the Booths' appeal being withdrawn."[12] Furthermore, the Booths take issue with the timing of the Secretary's Order, arguing that it could not have addressed events taking place after its issuance, and for this reason the court could

---

[7] *Id.* at *1.
[8] *Id.* at *7.
[9] Opening Br. at 28 (emphasis omitted).
[10] *Id.*
[11] *Id.*
[12] *Id.*

not make findings on compliance or noncompliance.[13] The Booths additionally argue that per Section 9109(e), the issue of noncompliance can only be asserted in the Superior Court, and further that the Secretary never claimed noncompliance.[14] The Booths maintain that their "arguments were sufficient" to support denial of the motion for summary judgment.[15] Finally, the Booths claim that the Superior Court's action subjected their case to "inject[ion of] an unpled claim."[16]

(8) This Court reviews a grant or denial of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[17] "Questions of law, including the interpretation of statutes, are also reviewed *de novo*."[18]

(9) Essentially, the Booths' position is that the Order should not have been given preclusive effect and, consistent with this view, the Secretary fell short of his burden.[19] This view lacks merit. This is because, by withdrawing their appeal, the Booths effectively forfeited the right to challenge their liability. As for the Booths'

---

[13] *Id.*
[14] *Id.* at 28-29, 31.
[15] *Id.* at 32.
[16] *Id.* at 32-33.
[17] *Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 197 A.3d 1042, 1046 (Del. 2018) (en banc).
[18] *City of Wilm. v. Nationwide Ins. Co.*, 154 A.3d 1124, 1127 (Del. 2017).
[19] Opening Br. at 31.

argument that their withdrawal equates to an affirmance by the EAB of the Order,[20] this view misses the significance of the withdrawal. In the July 10, 2019 Memorandum Opinion and Order, the Superior Court explained that the Booths' choice to withdraw their appeal had consequences: "Given the Booths' litigation choices, they have forfeited their right to now challenge their liability when they had a full and fair opportunity to do so below. Issue preclusion estops them from now contesting the Secretary's factual findings in the Order."[21] As for the Booths' claim that the Secretary "never addressed whether the Booths failed to comply or whether they did so without sufficient cause[,]"[22] the Secretary clearly stated in his First Motion for Summary Judgment (which the Booths reference repeatedly in their argument) that "[t]hey [(the Booths and Thoro Kleen)] have failed to comply with the Secretary's Order delivered to them in November 2017."[23] Finally, the record and decisions of the Superior Court do not support a finding that the court below improperly expanded the scope of liability or damages through "inject[ion of] an unpled claim[.]"[24]

(10) In the Memorandum Opinion and Order of July 10, 2019, after the Superior Court addressed the Order's requests of the Booths, the court stated: "The

---

[20] *Id.* at 28.
[21] *Garvin v. Booth*, 2019 WL 3017419, at *4 (Del. Super. July 10, 2010).
[22] Opening Br. at 31.
[23] App. to Opening Br. at A131.
[24] Opening Br. at 33.

Booths complied with none of the deadlines."[25]  This statement constitutes a finding of the Superior Court on the issue of compliance, separate and apart from the holding regarding issue preclusion.  The fact that the Order could not have made conclusions about compliance after it was issued is irrelevant to the Superior Court's decision. The Superior Court, not the EAB, made this decision about the Booths' noncompliance.  We find no error in the Superior Court's application of issue preclusion against the Booths and the court's ultimate determination as to liability in the July 10, 2019 Memorandum Opinion and Order.

(11)  On October 1, 2019 DNREC moved for a continuance of the trial date. DNREC requested the continuance because it had not fully determined its damages. In particular, it argued that it needed more time to determine its remedial costs.  The Booths opposed the continuance request.  They argued that the law of the case, as established in the Memorandum Opinion and Order dated July 10, 2019, limited the damages DNREC could seek to investigation and study related costs only.  They also argued that the law of the case limited DNREC to damages that had ripened on or before the date of oral argument on the above-mentioned motion for summary judgment.  In an Opinion dated October 31, 2019, the Superior Court granted DNREC's request for a continuance.[26]  The Booths claim on appeal that the Superior

---

[25] *Garvin*, 2019 WL 3017419 at *2.
[26] *Garvin v. Booth*, 2019 WL 5654661, at *1 (Del. Super. Oct. 31, 2019).

8

Court erred when it granted the continuance because the action on the continuance request had the effect of expanding the scope of potential DNREC damages for which they might be held liable to include remedial damages.[27] This, they claim, violated Superior Court Civil Rule 59(d) (which applies to motions to alter or amend a judgment) and affected their substantive rights.[28]

(12) We review the Superior Court's October 31, 2019 Opinion for an abuse of discretion.[29] "An abuse of discretion occurs when a court has … exceeded the bounds of reason in view of the circumstances, or … so ignored recognized rules of law or practices so as to produce injustice."[30]

(13) In its discussion of the continuance request, the Superior Court interpreted the Secretary's reasoning for the continuance to be for the development and addition of remediation costs.[31] In the October 31, 2019 Opinion, the Superior Court stated:

> It is inappropriate, however, to limit the Secretary's potential recovery to study and planning costs that were incurred before the time of summary judgment oral argument. The Court included references in its Memorandum Opinion and Order reciting the Secretary's agreement to so limit its damages. The Court did so in the portion of its decision addressing the future scope of

---

[27] Opening Br. at 37-38.
[28] *Id.* at 36-37; Super. Ct. Civ. R. 59(d).
[29] Opening Br. at 34; Answering Br. at 40.
[30] *Chaverri v. Dole Food Co.*, 245 A.3d 927, 935 (Del. 2021) (en banc) (quoting *Senu-Oke v. Broomall Condominium, Inc.*, 2013 WL 5232192, at *1 (Del. Sept. 16, 2013) (ORDER) (citations omitted)).
[31] Appendix to Opening Br. at A2181.

9

discovery. When reviewing the oral argument transcript, however, counsel for the Secretary made no representation about limiting the Secretary's claim to damages incurred to date. Rather, counsel estimated that approximately $260,000 of investigation and study costs had been incurred. He also represented, on behalf of the Secretary, that DNREC would not seek clean-up costs or civil penalties.[32]

(14) The Booths claim that the court's ruling exposed them to additional liability.[33] The Secretary counters that, because the Booths' liability was never up for debate, no amendment actually occurred, calling this a "clarifi[cation of] the scope of damages DNREC was seeking to be consistent with the Record."[34]

(15) It appears that the statement of the Court in the Opinion of October 31, 2019 was a mere clarification of the damages being sought rather than an amendment of a prior opinion, since summary judgment on damages was not granted in the July 10, 2019 Memorandum Opinion and Order, and the discussion of the Secretary's limiting of his claim comes within the context of the Superior Court's decision to permit discovery on matters pertinent to available damages.[35] It does not appear that any amendment of the Memorandum Opinion and Order of July 10, 2019 occurred, and because the Booths' liability was already established, their substantive rights were unaffected.

---

[32] *Garvin v. Booth*, 2019 WL 5654661, at *1 (Del. Super. Oct. 31, 2019).
[33] Opening Br. at 37-38.
[34] Answering Br. at 42.
[35] *Garvin v. Booth*, 2019 WL 3017419, at *6-7 (Del. Super. July 10, 2019).

10

(16) In the third Superior Court decision complained of, dated January 27, 2022, the Superior Court granted summary judgment in favor of DNREC for damages in the amount of $105,464.87.[36] The Court determined that the costs alleged by the Secretary were remedial costs incurred under the HSCA, and that the Booths failed to present adequate evidence to contradict the amounts of damages alleged.[37]

(17) The Booths argue that the Superior Court incorrectly held that remedial costs may include the Brownfield Grants, and that the Superior Court "disregarded that § 9109(h) required the Secretary to establish causation of damages to recover the amounts sought."[38] The Secretary asserts in response that Brownfield Grants are considered to be remedial costs incurred and thus should be recoverable from a potentially responsible party under the HSCA.[39]

(18) The HSCA provides for strict liability[40] for "[a]ny person who owned or operated the facility at any time"[41] "for all costs associated with a release from a facility and for all natural resource damages resulting from the release."[42] Furthermore, the HSCA provides for remedies: "[t]he Secretary may bring an action

---

[36] *Garvin v. Booth*, 2022 WL 247696, at *11 (Del. Super. Jan. 27, 2022).
[37] *Id.*
[38] Opening Br. at 18 (emphasis omitted).
[39] Answering Br. at 18.
[40] 7 *Del. C.* § 9105(b).
[41] 7 *Del. C.* § 9105(a)(1).
[42] 7 *Del. C.* § 9105(b).

11

in the Superior Court against any potentially responsible party to collect remedial costs incurred by the Secretary, or for a party's refusal to comply, without sufficient cause, with an order issued under subsection (a) or (b) of this section."[43]

(19) The Booths claim that DNREC may not recover from them the value of Brownfield Grants awarded pursuant to cleanup of the Site because they believe Brownfield Grants cannot be classified as remedial costs.[44] However, the Superior Court has already concluded that the Booths are potentially responsible parties,[45] a classification that subjects them to suit for remedial costs under the HSCA.[46]

(20) The regulations explain the term "remedial costs."[47] While it is true, as the Booths assert, that the explanation in the regulations as to how remedial costs are to be calculated does not include a mention of Brownfield Grants,[48] this does not automatically mean that Brownfield Grants cannot be considered remedial costs. The regulations do not give an indication that Brownfield Grants warrant a different sort of treatment than other types of costs.

(21) Furthermore, the omission of the term "Brownfield Grants" from this section of the regulations does not override the unambiguous language of the HSCA that clearly calls for the inclusion of "all costs associated with a release from a

---

[43] 7 *Del. C.* § 9109(e).
[44] Opening Br. at 23.
[45] *Garvin v. Booth*, 2019 WL 3017419, at *2 (Del. Super. July 10, 2019).
[46] 7 *Del. C.* § 9109(e).
[47] *See* 7 Del. Admin. C. § 1375-5.2.2.
[48] Opening Br. at 21; *see* 7 Del. Admin C. § 1375-5.2.2.

facility and for all natural resource damages resulting from the release"[49] for which the Booths are strictly liable. Furthermore, the HSCA provides that:

> The Secretary may recover the amount of public funding provided under this section from a potentially responsible party who has not entered into a settlement agreement under this section or fulfilled all obligations under the agreement. For purposes of cost recovery, the public funding shall be considered as remedial costs paid by the Secretary.[50]

This language indicates that a Brownfield Grant would be within DNREC's recoverable remedial costs, since the Brownfield Grants were public funding that was provided through payment to a contractor for the purpose of cleaning up the Site under a Brownfield Agreement with RWC.

(22) The Booths argue that the Superior Court's analysis started with the conclusion that Brownfield Grants are remedial costs, and "then reverse engineered a definition of 'remedial costs'" from that point.[51] The Booths insist that this "reverse engineer[ing]" occurred when the Superior Court interpreted the phrase "remedial costs incurred" rather than the term "remedial costs."[52] This argument is without merit. The Booths fail to demonstrate how the inclusion or exclusion of the term "incur" has bearing on the meaning of the phrase with regards to whether Brownfield Grants are included within the definition of remedial costs.

---

[49] 7 *Del. C.* § 9105(b).
[50] 7 *Del. C.* § 9107(d).
[51] Opening Br. at 20.
[52] *Id.* at 19-20.

(23)  Finally, because the Booths are strictly liable under the HSCA for the remedial costs, the Secretary need not prove causation in order to recover remedial costs from them.  Furthermore, the Booths' characterization of the Secretary's claim as only pertaining to failure to comply is incorrect.  The Superior Court below found that the Secretary has two claims under 7 *Del C.* § 9109(e):  "one for failure to comply with an Order that required the Booths to pay planning and study costs; and . . . a second claim permitting DNREC to independently collect the same remedial costs in a Superior Court action."[53]  It is clear that DNREC can recover remedial costs without proving that the costs were incurred because of the Booths' failure to comply with the Secretary's Order.

NOW, THEREFORE, IT IS THE ORDER of the Court that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[53] *Garvin v. Booth*, 2022 WL 247696, at *4 (Del. Super. Jan. 27, 2022).